## ESTATE OF JOHN KEYS, DECEASED.

### APPEAL BY M. BELL FROM THE COURT OF COMMON PLEAS OF GREENE COUNTY.

Argued October 6, 1890—Decided October 27, 1890.

(*a*) A coparcener of land, in process of partition, executed a power of attorney authorizing his sister to take possession of his real estate, to lease, and to sell and convey the same, and transmitted it by a letter to her saying: "I want you to collect the money that is coming to me from the land that is now to be sold, and keep the $250 and the interest on it that I borrowed of you:"

1. In such case, the power of attorney and letter operated as an equitable assignment to the sister of so much of the brother's interest in the estate as would be sufficient to pay the indebtedness specified in the letter, and the sister to that extent acquired a vested right in such interest, which was not divested by the death of the brother after the execution of the power of attorney.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 3 October Term 1890, Sup. Ct.; court below, No. 1 October Term 1884, C. P.

On January 14, 1889, in the matter of the partition of the real estate which was of John Keys, deceased, to the number and term of the court below, stated above, Marinda Bell presented her petition averring that the real estate of said deceased had been sold in said partition proceedings, and that on January 6, 1889, John Watson, the purchaser thereof, had paid into court, by leave thereof, the sum of $513.77, the last instalment of purchase money; that the heirs of the said deceased and the distributees of the fund in court were his eight brothers and sisters, of whom were the petitioner and Daniel Keys; that Daniel Keys died on or about April 15, 1887, after the sale of said real estate, but in his lifetime he had "executed and acknowledged a power of attorney, coupled with an interest, to your petitioner, authorizing and empowering her to collect his interest in said estate, and, at the time of the execution

of said power of attorney, he, by a writing, assigned and appropriated his share in said estate, or so much thereof as was necessary, to pay a debt which he, the said Daniel Keys, owed to your petitioner for borrowed money, . . . . . to wit, $250, bearing interest;" praying for leave to take out of court her individual one eighth of the fund and also the share of said Daniel Keys, deceased.

A rule having been granted, Henry Keys, the administrator of Daniel Keys, deceased, filed an answer denying the right of the petitioner to receive the share of said Daniel Keys, by any power of attorney or assignment executed in his lifetime.

It was shown by the testimony, taken and read on the hearing of the rule, that the proceedings for the partition of the real estate of John Keys, deceased, were begun on October 21, 1884, and so advanced that on January 23, 1885, an order was made directing the real estate to be sold, which order was renewed from time to time, and a sale made thereunder on January 6, 1886; and that on December 5, 1884, Daniel Keys had written to his sister Marinda Spriggs, now Bell, the following letter:

"Dear Sister:                          "December 5, 1884.

"Enclosed you will find power of atorney i want you to collect the money that is comeing to me from the land that is now to be sold and keep the two hundred and fifty dollars and the interest on it that i borrowed of you if there is any thing left you can send it to me and if there is not anuff to pay you the money that i borrowed of you i will send it to you some time in the future

                                "DANIEL KEYS"

The power of attorney referred to and enclosed in the foregoing letter was dated and acknowledged December 5, 1884, and provided:

"Know all men by these presents: That I, Daniel Keys, of the county of Calaveras and state of California, have made, constituted and appointed and by these presents do make, constitute and appoint Marinda Spriggs of the state of Pennsylvania my true and lawful attorney in my name, place and stead to enter into and take possession of all real estate that I now own or may hereafter acquire in the state of Pennsylvania, and to lease the same for such price as she may deem best, and col-

lect the rent, and also to sell and convey my said real estate, or any part thereof, for such price and upon such terms and credits as she may deem expedient. In witness whereof," etc.

After argument, the court, INGHRAM, P. J., citing Hunt v. Rousmanier, 8 Wheat. 174, ruled that the power of attorney was not coupled with an interest so as to entitle the petitioner to the fund in controversy, and discharged the rule granted. Thereupon, the petitioner took this appeal, assigning the order discharging said rule for error.

*Mr. A. A. Purman* (with him *Mr. H. J. Ross*), for the appellant.

Counsel cited: Kerr v. Gilmore, 6 W. 408; Jaques v. Weeks, 7 W. 261; Kunkle v. Wolfersberger, 6 W. 130; Lightner's App., 82 Pa. 301; Nesmith v. Drum, 8 W. & S. 9; Kountz v. Kirkpatrick, 72 Pa. 385.

*Mr. R. F. Downey*, for the appellee.

Counsel cited: 1 Parsons on Cont., 58, 60; 2 Kent's Com., 642; Young v. Cottle, 1 P. Wms. 101; Story on Agency, § 488; Power v. Power, 7 W. 205; Marseilles v. Kenton, 17 Pa. 238; Hartley's App., 53 Pa. 212; Blackstone v. Buttermore, 53 Pa. 266; Hunt v. Rousmanier, 8 Wheat. 201; Frederick's App., 52 Pa. 338.

OPINION, MR. JUSTICE STERRETT:

In her petition to the Court of Common Pleas, appellant refers to the proceedings in partition at No. 1 of October Term 1884, wherein the real estate of her brother John Keys, deceased, was sold, etc., and then in substance avers that $513.77, the last instalment of purchase money, has been paid into court; that her brother Daniel Keys, one of the eight heirs of said deceased, executed a power of attorney coupled with an interest in her favor, authorizing her to collect his share of the estate, and, at the same time, by a writing, assigned and appropriated his interest in the estate, or so much thereof as was necessary, to pay a debt of $250 which he owed her for borrowed money, etc., and asking leave to take out of court one eighth of the fund, to which, as one of the heirs of her brother, she was entitled, and also one eighth of the same, claimed by

her under and by virtue of said power of attorney and assignment. Leave was therefore granted to appellant and six other heirs to take out of court their respective shares of the money paid in as aforesaid; but, as to the remaining share, a citation was directed to Henry Keys, administrator of Daniel Keys, then deceased, to show cause why the share of his intestate should not be paid to appellant as prayed for in her petition.

In his answer, the administrator denied the right of appellant, by virtue of the alleged power of attorney, assignment, or otherwise, to take out of court the whole or any part of his intestate's share of the fund, and claimed that he alone, as his personal representative, was entitled to receive said share. The court held that the "power of attorney was not coupled with an interest so as to entitle" appellant "to the fund in controversy," and accordingly dismissed her petition as to that branch of her claim. The sole question presented by the assignments of error is whether in so deciding the court did not err.

There is nothing in the power of attorney from Daniel Keys to appellant to indicate that it was intended to operate as a power coupled with an interest; but his letter of same date, delivered to her with the power of attorney, fully explains the purpose of the latter, and should be considered in connection therewith. That letter, dated December 5, 1884, is as follows:
"Dear Sister:

"Enclosed you will find power of atorney i want you to collect the money that is comeing to me from the land that is now to be sold and keep the two hundred and fifty dollars and interest on it that i borrowed of you if there is anything left you can send it to me and if there is not anuff to pay you the money that i borrowed of you i will send it to you some time in the future　　　　　　　　　DANIEL KEYS."

As disclosed by this letter, the manifest purpose of Daniel Keys was to specifically appropriate so much of his share in his brother's estate as was necessary to pay the indebtedness therein mentioned; and, to that end, he invested his sister with full authority to receive the money that was coming to him from the land that was then about being sold, and credit the same on account of that indebtedness. There is nothing in the evidence to indicate any other intention. The land re-

ferred to in that and subsequent letters is undoubtedly the same that was shortly afterwards sold under the proceedings in partition, and the money in court is part of the proceeds of that sale. What, then, was the effect of the power of attorney and accompanying letter, both of which appear to have been delivered to appellant at the same time? Without pausing to inquire what is necessary to constitute a power coupled with an interest, and wherein it differs from a specific appropriation of property, or the proceeds thereof, to the payment of a particular debt, or for any other special purpose, we are of opinion that the power of attorney and letter above quoted operated as an equitable assignment to appellant of so much of Daniel Keys's interest in the estate of his brother John as would be sufficient to pay the indebtedness of $250, and interest, specified in the letter. To that extent, appellant thereby acquired a vested right to the purchase money raised by the sale in partition, and that right was not divested by the subsequent death of Daniel Keys in April, 1887.

It appears that his share of the fund paid into court is less than the balance due appellant. If that be so, she is entitled to the whole of the fund in controversy. It therefore follows that the learned judge erred in refusing to permit her to take it out of court.

> Decree reversed, at the costs of the appellee, and record remitted for further proceedings in accordance with this opinion.

